We have not failed to note that the relator claims that the assessment was without jurisdiction, and therefore that he was not confined to the specific remedy by certiorari. We do not agree, however, with this contention. Henry D. Cochrane, as executor, was a resident, and it is not suggested that he did not have property of the estate within the city of New York; and the only reason why the assessment as originally made was illegal was due to the fact·that it was in form against "the executors, administrators, or trustees," instead of against the person or persons by name, as representatives of the estate. To cure this illegality, the act of 1898, referred to, was passed, and whether or not it was effective could have been determined upon a review by certiorari.

The relator gives no excuse for his failure to proceed within the four months allowed, during which he could have obtained the writ of certiorari, and only now, after the time has long since expired, and the warrant is in the hands of the marshal to collect the tax, is an effort made to stay the collection. We think that the remedy which is given by certiorari to review an assessment which is illegal, erroneous, and unequal must be resorted to within the time fixed, and, if not, that the relator must be left to his remedy, if any, which he may have in equity or at law, and that he is not entitled to the peremptory writ of mandamus.

The order is accordingly affirmed, with costs. All concur.

---

FRANK v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

STREET RAILROADS—INJURY TO PERSON ON TRACK—NEGLIGENCE.
　　Where a boy running across a street-car track could have crossed in safety, but for his stopping to pick up a penny he had dropped, it cannot be inferred that the gripman of an approaching car was negligent in failing to ring the gong, where it was not shown that he did not apply the brakes as soon as he discovered the boy's danger, nor that he did not stop his car in the shortest time possible.

Appeal from trial term, New York county.

Action by Albert Frank, an infant, by Michael Frank, his guardian ad litem, against the Metropolitan Street-Railway Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

The action was brought to recover $25,000 damages by reason of injuries sustained by the plaintiff through the alleged negligence of the defendant in the operation of one of its cars on Lexington avenue at the intersection of 112th street, on Sunday afternoon, June 16, 1897. The plaintiff was, at the time of the accident, 6 years of age, and just previous thereto had been in the care of his married sister at 104 East 112th street. He was left on the doorstep, with instructions to remain there while she went into the house; and, during her absence, started down 112th street to the corner of Lexington avenue, where he met his sister Blanche, aged 13 years, and asked her for a penny, which she gave him. What then occurred is related by the various witnesses as follows:

Blanche Frank testified that she was on the side nearest the East river, and that "after I gave him the penny he crossed over on the other side of 112th

street. That is all I seen of him. I was facing southwest. I did not see the car come along which struck him. * * * I was talking to a friend. * * * I did not hear any bell ring."

The boy was not sworn, but was permitted to say: "I went down to this corner the other side, and then I went right across, * * * and the car was at 110th street, and then I went across, and then the car came and struck me. * * * On the track I was looking for my penny. * * * I dropped it on the track. I had been looking for my penny two hours. * * * I did not hear the bell ring of the car at all. There were two other boys with me. They went across with me to the other side." In reply to questions, he stated that he started to go across to get candy, and ran as hard as he could, but then said that he walked across; that the candy store was at the corner of 113th street; that "the car when I dropped my penny was up the hill. I thought it was way up there. I didn't see the car. I was looking for my penny * * * a long time."

James Nulty, who picked the boy up, testified: "I was standing on the northeast corner. * * * I did not see the car as it approached. * * * I did not hear it approach at all. I did not hear any bell ring. * * * I did not notice whether the bell rang or not. * * * I was talking. * * *"

Patrick McGuire testified that he was with Mr. Nulty, and saw the car approach, and observed its speed, which was about 7 miles an hour, and did not hear any bell ring, but the car stopped 35 or 40 feet from the crossing; that he did not see the collision.

Rosa Kleinhard, 13 years of age, said she was on the southwest corner, speaking with Blanche Frank, and saw Blanche give the boy the penny; that he went to the northwest corner, and then over to the candy store; that he dropped his penny on the uptown track, and stooped down to look for it, and the car came along "the way they generally come,—fast"; that the bell did not ring; the car moved 35 or 40 feet.

Isidor Weil said he was sitting at the window of his house on Lexington avenue, about 60 feet from 112th street, and did not hear the car approach or any bell ringing, but that the first intimation was a lot of shouting in the street; that he could have heard the bell if it rang, although he did not hear any ringing that day, as he was at the window then.

Estelle Frank said she was on the avenue at the time, and if the car had rung the bell she would have heard it.

The rest of the plaintiff's testimony relates to the extent of the injuries received, and to the fact that at such a place the car could have been stopped within 25 feet.

For the defendant, H. A. Bedder testified: That he was a passenger in the car, which was an open one, and sat on the second seat from the rear, looking towards the west side, and that, when that part of the car was about 10 feet south of the south crossing, in looking west he saw three boys running in a line. That when he saw them they were a little south of the north crossing, between the sidewalk and the south track, "running in a northwesterly direction." That "the front of the car was about the middle of the crossing,— middle of the street. * * * They were running all together when they disappeared from my view. The last boy was right close to the car. He was not ten feet away when they disappeared. * * * I should think the boys were away 15 or 20 feet; no more than 20 feet in a direct line. Of course, they were diagonal. That he had not noticed that the car had not slackened its pace at that time. That it went right along, * * * till it finally stopped, * * * some 40 or 50 feet north of the crossing. * * * That he thought those boys would never be able to get across the track without being struck by the car."

William Schneider testified: That he was on the corner of 112th street and Lexington avenue at the time, and heard a gong of a car, and looked, and it was about the corner store on the other side. That he saw boys just "cater-cornered, coming from the southwest corner,—I mean the northeast corner, right across,—to run across, * * * it might have been six feet, might have been seven, in front of the car." That he paid no attention, and was talking, and the next he heard was hollering.

Motion was again made to dismiss the complaint, and a verdict was asked

to be directed for the defendant, on the ground that there was no evidence from which there could be any verdict predicated on the negligence of the driver; that the plaintiff has failed to prove freedom from negligence in the care of the child; and that the preponderance of evidence entirely exonerates the road from any negligence. The motions were denied, and the case submitted to the jury, which returned a verdict of $750 for the plaintiff. From the judgment so entered, the defendant appeals.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.
Louis Marshall, for respondent.

O'BRIEN, J. It is impossible, from the evidence, to point out any specific act of negligence on the part of the defendant's gripman which caused the accident. The judge apparently, as shown in his charge to the jury, placed it upon the failure to ring the gong. He instructed them that, as a matter of law, it was not necessary to ring the gong at every crossing, but that it was a question for them to determine whether, upon the conditions existing at the time, with the boys on or near the track, the gong should have been rung. If the boy was so situated that the gripman saw, or should have seen, the boy in a position of danger, the failure to ring the gong, if time permitted, might be evidence of negligence.

The testimony of some of the plaintiff's witnesses, and of both of the defendant's witnesses, however, tended to show that the boys were proceeding from the westerly side in a northeasterly direction across the avenue, running towards a candy store on the east side of the avenue, and that, the other boys having got safely across, the plaintiff, who had dropped his penny, stopped for the purpose of finding it, and while in that position was struck by the advancing car, the approach of which, it must be assumed, he did not notice. If the boy, after starting to run across the track, stopped to pick up the penny, and as a result was injured, then the facts would bring it within the principle of the Fenton Case (Fenton v. Railway Co., 126 N. Y. 625, 26 N. E. 967), and no recovery could be had.

The main difficulty with the case is that there is no agreement among the witnesses as to just how the accident occurred, nor any clear or intelligent statement of the direction from which the boys came or were going, or the distance of the car from them at the time they actually reached the uptown track, although the weight of evidence sustains the view that the boy, after getting the penny from his sister, started with the two other boys from the southwest corner of Lexington avenue and 112th street, and, after proceeding to the northwest corner, went across in a northeasterly direction towards a candy store on the east side of the avenue. The gripman, so far as the evidence shows, had no reason to anticipate that the boy, while proceeding with the others across the track, would stoop down to pick up a penny when a car was approaching rapidly. And no witness says that the gripman did not apply the brakes as soon as he discovered the boy's position. One says the car could be stopped in about 25 feet, but it was shown that the car stopped about 35 feet

above the north crossing. As the boy was at some point north of the north crossing, it was not shown that the gripman did not stop in the shortest possible time after he saw the boy stooping on the track to get his penny.

If we assume the version of the occurrence supported by the weight of evidence, that the boy was running across the track, and could have crossed in safety but for his stopping to pick up the penny, it cannot be inferred that the gripman was negligent because he devoted his energies to the brake, and failed to ring the gong. With the boy suddenly stooping in front of the car, he could not be saved by ringing the gong, and the duty of the gripman was to give all his attention to stopping the car. That he did not so devote himself is not made to appear, although that was the burden resting on the plaintiff. To sustain this judgment, we must be satisfied to have it rest on the purest speculation and conjecture, rather than, as the law requires, on proof that the defendant's employés were guilty of negligence which was the sole cause of the injuries.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide event. All concur.